23478

Robert Lee ELMORE, Respondent v. STATE of South Carolina, Petitioner.
(409 S.E. (2d) 397)

Supreme Court

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Asst. Attys. Gen. W. Teresa Nesbitt* and *Delbert H. Singleton, Jr.,* Columbia, *for petitioner.*

*Asst. Appellate Defender Wanda Hagler Haile, S.C. Office of Appellate Defense,* Columbia, *for respondent.*

Submitted April 23, 1991.

Decided Sept. 23, 1991.

CHANDLER, Justice:

We granted certiorari to review the decision of the post-conviction relief (PCR) judge holding: (1) that Respondent Elmore's constitutional *ex post facto* rights have been violated, and (2) that the 1986 Omnibus Crime Bill does not entitle Elmore to earned work credits in reduction of parole eligibility time.

We reverse in part and affirm in part.

## FACTS

On December 29, 1980, Elmore committed murder and armed robbery; on June 3, 1981, he pled guilty and was sentenced to life imprisonment. Upon incarceration, he began earning work credits to shorten the date on which he would be entitled to consideration for parole. Thereafter, Legislative Act No. 462 of 1986 (Omnibus Crime Bill) was interpreted as disallowing such credits, and, accordingly, they were discontinued.

Elmore filed for PCR, alleging that denial of these credits constituted a violation of the *ex post facto* clauses of the South Carolina and United States Constitutions. The PCR court agreed, finding that Elmore's constitutional rights had been violated. The State now seeks certiorari.

## LEGISLATIVE HISTORY

A brief legislative history of the statutes controlling parole rights of convicted murderers is necessary to an understanding of this case.

In 1976 statutory law allowed all prisoners to earn work credits relative to parole eligibility. Subsequently, work credits were disallowed, then again allowed, as follows:

(1) 1978 Act No. 496 § 16 which disallowed work credits for prisoners serving life sentences;

(2) 1981 Act No. 100 § 9 which reinstated work credits for all prisoners;

(3) 1985 Act No. 104 § 1 which disallowed work credits for prisoners guilty of murder, until service of twenty years;

(4) 1986 Act No. 462 (Omnibus Crime Bill) which contains conflicting provisions:

    (a) § 27 which provides that the mandatory sentence for a prisoner guilty of murder cannot be reduced by any credits;

    (b) § 35 which allows deductions for work credits by all prisoners.

## ISSUES

1. If, at the time an offense is committed, work credits may be earned by prisoners, does a subsequent revocation violate constitutional *ex post facto* clauses?

2. What is the effect of the 1986 Omnibus Crime Bill upon Elmore's right to earn work credits in reduction of parole eligibility?

## DISCUSSION

### A. EX POST FACTO VIOLATION

The *ex post facto* clause protects against retroactive legislative provisions which are disadvantageous to the offender. A mere procedural change in law, not increasing punishment or changing elements of the offense, does not result in an *ex post facto* violation. *Miller v. Florida*, 482 U.S. 423, 107 S. Ct. 2446, 96 L. Ed. (2d) 351 (1987). The law existing at the time of the offense, not the time of sentencing, determines whether an increase of punishment or reduction of benefits constitutes an *ex post facto* violation. *Id.*

We reject State's contention that *ex post facto* is inapplicable to parole eligibility. Specifically, we disagree that a change in work benefits is merely procedural. We hold that subsequent legislation which reduces prisoners' work benefits results in a substantive violation of the *ex post facto* clauses. *See Warden v. Marrero*, 417 U.S. 653, 94 S. Ct. 2532, 41 L. Ed. (2d) 383 (1974) (parole eligibility provisions are part of the sentence); *Lindsay v. Washington*, 301 U.S. 397, 57 S. Ct. 797, 81 L. Ed. 1182 (1937) (increase in punishment violates the constitution); *State v. Matthews*, 296 S.C. 379, 373 S.E. (2d) 587 (1988) (to sentence defendant under statute enacted after commission of crime, providing increased parole eligibility time, would result in *ex post facto* violation).

However, since the law existing at the time Elmore committed the offense did not allow work credits, *ex post facto* has no application here. We reverse that portion of the PCR order holding that a violation occurred.

### B. OMNIBUS CRIME BILL

We now address the question of whether the Omnibus Crime Bill denies those prisoners sentenced to life for murder the right to apply earned work credits in re-

duction of their parole eligibility time.

As indicated earlier, the Bill has two conflicting provisions, § 27 and § 35. Section 27 amends the murder statute, S.C. Code Ann. § 16-3-20(A) (Supp. 1990), and provides that the mandatory sentence for murder may not be reduced by any credits.

Section 35 amends the parole statute, S.C. Code Ann. § 24-21-610. It provides deductions for earned work credits in computing parole eligibility, notwithstanding § 16-3-20, for all prisoners.

We hold that inasmuch as § 27 addresses a specific group of prisoners—those serving life sentences for murder—it controls over the more general parole statute applying to all prisoners. *See State v. Cutler,* 274 S.C. 376, 264 S.E. (2d) 420 (1980) (although penal statutes are to be construed strictly against the State, where there is a conflict between a general statute and a specific statute, the specific prevails).

Accordingly, the PCR court was correct in finding that the 1986 Omnibus Crime Bill operates to deny Elmore the work credit hours in reduction of his time for parole consideration.

## CONCLUSION

On the date Elmore committed murder and armed robbery, the law did not entitle him to earn work credits in reduction of his time for parole eligibility. Accordingly, his *ex post facto* rights are not violated by the enactment of the 1986 Omnibus Crime Bill, which revokes the right to apply earned work credits.

Affirmed in part; reversed in part.

GREGORY, C.J., and HARWELL, FINNEY and TOAL, JJ., concur.